IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

MARIELY OLMEDA QUINONES

XXX-XX-4346

Debtor(s)

CASE NO. 10-10263 BKT

Chapter 13

FILED & ENTERED ON 09/02/2011

## **OPINION AND ORDER**

This proceeding is before the court upon Mariely Olmeda Quinones' ("Debtor") Objection to Claim Number 2 [Dkt. No. 17], First Bank Puerto Rico's ("First Bank" or "Creditor") Opposition [Dkt. No. 34], Debtor's Motion for Summary Judgment [Dkt. No. 41], First Bank's Opposition to the Motion for Summary Judgment [Dkt. No. 48], First Bank's Memorandum in Support of Opposition to Motion for Summary Judgment [Dkt. No. 49], First Bank's Urgent Motion to perfect mortgage lien pursuant to 11 USC 362 (b)(3) [Dkt. No. 58], Debtor's Response to First Bank's Urgent Motion [Dkt. No. 61] and First Bank's motion in opposition to Debtor's response [Dkt. No. 63]. For the following reasons, Debtor's Motion for Summary Judgment is hereby DENIED.

## I. **PROCEDURAL AND FACTUAL BACKGROUND:**

On January 11, 2006, Debtor presented a Certification of Segregation and Purchase and Sale

1

issued under her name in Section III of the Bayamon Property Registry. On September 11, 2007, a mortgage deed in warranty of a mortgage note over Debtor's segregated property was issued in favor of First Bank in the amount of $86,400.00; which was presented in Section IV of the Bayamon Property Registry. On September 30, 2009, the Property Registrar notified an error in regards to the Certification of Segregation presented due to a mistake in the description of the ward and the location where the certification was presented. The registrar notice was to expire on November 30, 2009, however, Debtor withdrew the document from the registry on October 16, 2009.

On October 29, 2010, Debtor filed the captioned Chapter 13 petition. On December 8, 2010, First Bank filed proof of claim number 2, alleging to have a secured claim in the amount of $86,169.92. On December 30, 2010, Debtor filed an objection to proof of claim number 2 alleging that First Bank did not have a valid perfected lien over her property. First bank opposed the objection and argued that Debtor withdrew the certification and therefore "had incurred in fraud against the bank." Creditor accompanied its motion with a title search to support their claim of secured status [Dkt. No. 32]. Debtor sur-replied to reiterate her position and to strike the fraud allegation made by First Bank [Dkt. No. 34].

Debtor filed for summary judgment on March 25, 2011, arguing that the evidence presented by First Bank to establish security in fact evinces their status as unsecured. Debtor argues that because her property is not properly recorded, the mortgage cannot be properly recorded over an inexistent record and therefore, First Bank claim cannot be secured. First Bank replied alleging that under the equitable doctrine of "unclean hands," Debtor should be precluded from questioning the validity of the Bank's secured status and the objection to proof of claim number 2 by Debtor should

2

be denied even though there were problems with the recordation of the mortgage deed. Creditor sustains that in the balance of equities, the Debtor cannot on one hand claim title to the real estate which is still subject to qualification by the Registrar of the Property, and reject on the other hand the validity of the Bank's mortgage on the same property.

Subsequently, on May 25, 2011, First Bank filed an "Urgent motion requesting leave to conclude perfection of mortgage lien pursuant to section 362(b)(3) before June 6, 2011 and supplementing opposition to motion for summary judgment." Therein, First Bank argues that the Registrar had given until June 6, 2011 for the bank to take the necessary steps to perfect its security interest. Also, the Creditor argued that because their mortgage deed was presented prior to the filing of the bankruptcy petition, it should be deemed as secured, and therefore the claim is not subject to Debtor's avoidance efforts.

Debtor requested an extension of time to respond and the Court granted their request on May 31, 2011 [Dkt. No. 57]. Two days later, First Bank filed for reconsideration of the order granting Debtor time to respond [Dkt. No. 58]. This Court denied the motion and entered the following order:

> Firstbank's motion for reconsideration, Dkt. No. 58 is hereby DENIED. The Court has under advisement the objection over First Bank's claim, the dispositive motions and the Pre Trial Report submitting the controversy for resolution as a matter of law. Depending upon the ruling, the relief granted may include authorization to refile the Certification and the mortgage deed, to allow it now would be premature.

Debtor filed her opposition to the "urgent" motion on June 4, 2011 [Dkt. No. 64]. Debtor argues that Creditor presents no evidence of the alleged extension of time given by the Registrar to record a lien on Debtor's property. That in fact, First Bank's predicament is the result of its failure to perform due diligence prior to lending the money and gain entry into the Property Registry. Also, that

3

the lack of "registry tract" bars the Registrar of the Property from encumbering the lien over an inexistent property. Debtor also moved to Court to strike the allegations made of bad faith by the claimant in their "urgent motion."

Creditor replied to Debtor's opposition on June 30, 2011, stating among other things, that pursuant to the third paragraph included in the deed of mortgage executed between the parties, Debtor stated that she was lawfully entitled to the property conveyed, and has the right to mortgage said property [Dkt. No. 63].

The Court held the scheduled confirmation hearing on August 8, 2011 and the matter is submitted. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§1334 and 157(a) and the General Order of referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).

## II.     APPLICABLE LAW AND DISCUSSION:

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See,* Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. *See also,* Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986). In viewing the facts, the Court must draw all reasonable inferences from them, in the manner most favorable to the nonmovant. Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994); Piccicuto v. Dwyer, 39 F.3d 37, 40 (1st Cir. 1994). "The summary judgment procedure authorized by Rule 56 is a method for promptly

disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10 Wright and Miller, Federal Practice and Procedure § 2712 (3d ed. 1998). "Rule 56 provides the means by which a party may pierce the allegations in the pleading and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." *Id*. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried and it is improper if the existence of a material fact is uncertain. *Id*. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). A fact is considered material if it might affect the outcome of a case under the governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995). Therefore, a factual issue is material only if it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment. U.S. Fire Ins. Co. v. Productions Padosa, Inc., 835 F.2d 950, 953 (1st Cir. 1987).

It is of utmost importance for this court to first address Creditor's allegation that they have a right to perfect pursuant to the exception set forth by section 362 (b)(3) of the Bankruptcy Code. In the case of Tosado v. Banco Popular (In re Rios), 420 B.R. 57 (Bankr. D. Puerto Rico 2009), the court found that in order for the exception to apply, three requirements need to be present: (i) an act to perfect; (ii) an interest in property; and (3) under the circumstances in which the perfection-authorizing statute fits within the parameters of section 546(b) of the Bankruptcy Code. In re 229 Main St., 262 F. 3d 1 at 5. Thus, section 362(b)(3) depends on the limitations imposed on the trustee's avoiding powers pursuant to section 546(b) of the Bankruptcy Code. The purpose behind

5

section 546(b)(1) is to "protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens as of an effective date that is earlier than the date of perfection." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy P 546.03[1] (15th ed. 2009) quoting S. Rep. No. 989, 95th Cong., 2d Sess. 86-87 (1978), reprinted in App. Pt. 4(e)(1) infra; H.R. Rep. No. 595, 95th Cong., 1st Sess. 371-371 (1977) reprinted in App. Pt. 4(d)(i) infra. *Id.* at 68

Under Puerto Rico law, the constitution and perfection of the mortgage liens will relate back to the date the same were presented for recordation (registration) to the properly registrar. In order to record documents that declare, convey, encumber, modify or extinguish dominion and other real rights on real property, the right of the person who grants them or in whose name the referred transactions or contracts are granted must appear previously recorded." 30 L.P.R.A. § 2260. It is indispensible that in order for the mortgage to be validly constituted, the instrument in which it is created be entered in the registry of property. 31 L.P.R.A. § 5042.

In the instant case, it is undisputed that the certification contained errors and was presented in the wrong section of the Property Registry; hence, the registrar was impeded from recording either the property under Debtor's name or subsequently issue a mortgage over the unregistered property. Therefore, under state law, the mortgage is ineffective making the exception in 11 U.S.C. § 362 (b)(3) inapplicable to this case.

Creditor also argues that the doctrine of "unclean hands" precludes Debtor from questioning Creditor's secured status because upon the withdrawal of the Segregation Certification, without notice to First Bank and in violation of the subsequent Mortgage Deed, Debtor violated her pledge

6

that she was the lawful owner of the property and will defend the title to the same against all claims. Creditor sustains that it was Debtor's misconduct and inequitable acts that lead to the controversy at hand [Dkt. No. 49].

The unclean hands doctrine is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper has been the behavior of the defendant. The saying he who comes into equity must come with clean hands of necessity gives wide range to a court's use of discretion to withhold punishment of behavior which it considers not to warrant so severe a sanction. The doctrine only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts in some measure affect the equitable relations between the parties in respect of something brought before the court. Greene v. Mullarkey (In re Mullarkey), 410 B.R. 338 (Bankr.D.Mass.2009). This is to say that we are skeptical of those who seek equitable relief when they themselves have engaged in misconduct. For the defense to apply, we have also routinely stated that the misconduct must be "directly related to the merits of the controversy between the parties." (citing Keystone Driller Co. v. General Excavator Co., 290 U.S. 240 (U.S. 1933)) Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 480 (1st Cir. P.R. 2009)

### III. CONCLUSION:

Creditor seeks to invoke the "unclean hands" defense, arguing Debtor's alleged misconduct when she withdrew the Segregation Certification from the Property Registry on October 16, 2009, before the expiration of the presentment, without having informed First Bank, which allegedly did not have knowledge of the defect and in violation of her pledge in the mortgage deed. The

7

application of this doctrine requires a factual determination by a preponderance of evidence to establish Debtor's knowledge, intent and willfulness upon her actions in the case at hand and the Creditor's diligence in the perfection of the mortgage. These facts appear to be material and in dispute, thereby defeating summary judgment at this stage. Therefore, this Court will schedule an evidentiary hearing to resolve the facts in dispute. A Pre Trial Order will be entered separately.

IT IS SO ORDERED.

San Juan, Puerto Rico this 02 day of September, 2011.

Brian K. Tester
U.S. Bankruptcy Judge

8